## GRAND TRUNK RAILWAY COMPANY *v.* IVES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
EASTERN DISTRICT OF MICHIGAN.

No. 134.   Argued January 4, 5, 1892. — Decided April 4, 1892.

When, in an action brought against a railroad company in Michigan by the administrator of a person killed by one of its trains, to recover damages for the killing, the record in this court fails to show that any exception was taken at the trial, based upon the lack of evidence to show that he left some one dependent upon him for support, or some one who had a reasonable expectation of receiving some benefit from him during his lifetime, as required by the laws of that State, (Howell's Ann. Stat. §§ 3391, 3392,) the objection is not before this court for consideration.

The terms "ordinary care," "reasonable prudence," and similar terms have a relative significance, depending upon the special circumstances and surroundings of the particular case.

When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury; but where the facts are such that all reasonable men must draw the same conclusion from them, the question of negligence is one of law, for the court.

The running of a railroad train within the limits of a city at a greater speed than is permitted by the city ordinances, is a circumstance from which negligence may be inferred in case an injury is inflicted upon a person by the train.

Whether ordinary care or reasonable prudence requires a railroad company to keep a flagman stationed at a crossing that is especially dangerous is a question of fact for a jury; although in some cases it has been held to be a question of law for the court.

Where the statutes of a State make provisions in regard to flagmen at

crossings, this court will follow the construction given to such statutes by its courts; and, so following the decisions of the courts of the State of Michigan, it is held that the duty to provide flagmen or gates, or other adequate warnings or appliances, may exist outside of the statute if the situation of the crossing reasonably requires it.

The giving of an erroneous instruction which was not prejudicial to the objecting party is not reversible error.

In an action against a railroad company to recover for injuries caused by the negligence of its servants the determination of the fact of whether the person injured was guilty of contributory negligence is a question of fact for the jury.

In such case if the proximate and immediate cause of the injury can be traced to the want of ordinary care and caution in the person injured, an action for the injury cannot be maintained unless it further appear that the defendant might, by the exercise of reasonable care and prudence, have avoided the consequences of the injured party's negligence.

In determining whether the injured party in such case was guilty of contributory negligence, the jury is bound to consider all the facts and circumstances bearing upon the question, and not select one particular fact or circumstance as controlling the case to the exclusion of all others.

THE case is stated in the opinion.

*Mr. Otto Kirchner* for plaintiff in error.

*Mr. Don M. Dickinson* for defendant in error.

MR. JUSTICE LAMAR delivered the opinion of the court.

This was an action by Albert Ives, Jr., as administrator of the estate of Elijah Smith, deceased, against the Grand Trunk Railway Company of Canada, a Canadian corporation operating a line of railroad in Michigan, to recover damages for the alleged wrongful and negligent killing of plaintiff's intestate, without fault on his own part, by the railway company, at a street crossing in the city of Detroit. It was commenced in a state court and was afterwards removed into the Federal court on the ground of diverse citizenship. The action was brought under §§ 3391 and 3392 of Howell's Annotated Statutes of Michigan, and, as stated in the declaration, was for the benefit of three daughters and one son of the deceased, whose names were given.

There was a trial before the court and a jury, resulting in a verdict and judgment in favor of the plaintiff for $5000, with interest from the date of the verdict to the time the judgment was entered. The plaintiff offered to remit the interest, but the court refused to allow it to be done. The defendant then sued out this writ of error.

On the trial, the plaintiff, to sustain the issues on his part, offered evidence tending to prove the following facts: Elijah Smith, plaintiff's intestate, at the time of his death in May, 1884, was about seventy-five years of age, and had been residing on a farm, a few miles out of the city of Detroit, for several years, being engaged in grape culture. It was his custom to make one or more trips to the city every day during that period. In going to the city he travelled eastwardly on a much travelled road, known as the " Holden road," which, continued into the city, becomes an important and well-known street running east and west. Within the limits of the city the street was crossed obliquely, at a grade, by the defendant's road and two other parallel roads coming up from the southwest, which roads, in the language of the defendant's engineer, curve " away from a person coming down the Holden road." At the crossing the Holden road is sixty-five and one-half feet wide. The defendant's right of way is forty feet wide, and the right of way of all the parallel railways at that place is one hundred and sixty feet wide.

For a considerable distance, at least three hundred feet, along the right side of the road going into the city there were obstructions to a view of the railroad, consisting of a house known as the " McLaughlin house," a barn and its attendant outbuildings, an orchard in full bloom, and, about seventy-six feet from the defendant's track, another house known as the " Lawrence house." Then there were some shrub bushes, or, as described by one witness, some stunted locust trees and a willow, a short distance from the line of the right of way. So that, it seems, from all the evidence introduced on this point, it was not until a traveller was within fifteen or twenty feet of the track, and then going up the grade, that he could get an unobstructed view of the track to the right. One

witness testified that if he was in a buggy, his horse would be within eight feet of the track before he could get a good view of it in both directions.

On the morning of the fatal accident, Mr. Smith and his wife were driving down the Holden road into Detroit, in a buggy with the top raised, and with the side curtains either raised or removed. Opposite the Lawrence house they stopped several minutes, presumably to listen for any trains that might be passing, and while there a train on one of the other roads passed by going out of the city. Soon after it had crossed the road, and while the noise caused by it was still quite distinct, they drove on towards their destination. Just as they had reached the defendant's track, and while apparently watching the train that had passed, they were struck by one of the defendant's trains coming from the right at the rate of at least twenty — some of the witnesses say forty — miles an hour, and were thrown into the air, carried some distance, and instantly killed. This train was a transfer train between two junctions, and was not running on any schedule time. The plaintiff's witnesses agree, substantially, in saying that the whistle was not blown for this crossing nor was the bell rung, and that no signal whatever of the approach of the train was given until it was about to strike the buggy in which Mr. Smith and his wife were riding. The train ran on some four hundred feet or more after striking Mr. Smith before it could be stopped.

It further appeared that an ordinance of the city of Detroit required railroad trains within its limits to run at a rate not exceeding six miles an hour; and it likewise appeared that there was no flag-man or any one stationed at this crossing to warn travellers of approaching trains.

Most of the witnesses for the defence, consisting, for the main part, of its employés aboard the train at the time of the accident, testified, substantially, that the ordinary signals of blowing the whistle and ringing the bell were given before reaching the crossing, and that, in their opinion, the train was not moving faster than six miles an hour. It must be stated, however, that some of the defendant's witnesses the brake-

man, among others, would not say that the ordinary signals were given, nor would they testify that the train was not moving faster than at the rate prescribed by the city ordinance; and one of its witnesses, in particular, testified that the train was moving "about 20 miles an hour, perhaps a little faster."

A witness called by the plaintiff in rebuttal, an engineer of forty-five years' standing, who was examined as an expert, testified that if the train ran on after striking Mr. Smith the distance it was said to have gone before it could be stopped, it must have been going at the rate of twenty-five or thirty miles an hour; and that if it had been going but six miles an hour, as claimed by the defendant, it could have been stopped in the length of the engine, and even without brakes would not have run more than thirty-five feet, if reversed.

The foregoing embraces the substance of all the evidence set forth in the bill of exceptions on the question of how the fatal accident occurred, and with respect to the alleged negligence of the defendant, in the premises, and also the alleged contributory negligence of Mr. Smith.

At the close of the testimony the defendant submitted in writing a number of requests for instructions to the jury, which, if they had been given, would have virtually taken the case from the jury and would have authorized them to bring in a verdict in its favor. The court refused to give any of them, in the language requested, but gave some of them in a modified form and embraced others in the general charge. The refusal to give the instructions requested was excepted to, and exceptions were also noted to various portions of the charge as given. As those exceptions are substantially embodied in the assignment of errors, they will not be further referred to here, but such of them as we deem material will be considered in a subsequent part of this opinion.

The first point raised by the defendant and urgently insisted upon, as being embraced in the assignment of errors, is, that there is no evidence in this record that Mr. Smith left any one dependent upon him for support, and that, therefore, no right of action could be in the plaintiff, as his administrator, under

the Michigan statutes, against the defendant, for causing his death.

Sections 3391 and 3392 of Howell's Annotated Statutes of Michigan, under which this action was brought, provide as follows:

"Sec. 3391. Whenever the death of a person shall be caused by wrongful act, neglect or default of any railroad company, or its agents, and the act, neglect or default is such as would (if death had not ensued) entitle the party injured to maintain an action and recover damages in respect thereof; then, and in every such case, the railroad corporation which would have been liable if death had not ensued shall be liable to an action on the case for damages, notwithstanding the death of the person so injured, and although the death shall have been caused under such circumstances as amount in law to felony.

"Sec. 3392. Every such action shall be brought by and in the names of the personal representatives of such deceased person, and the amount recovered in any such action shall be distributed to the persons, and in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate; and in every such action the jury may give such amount of damages as they shall deem fair and just, to the persons who may be entitled to such damages when recovered: *Provided*, nothing herein contained shall affect any suit or proceedings heretofore commenced and now pending in any of the courts of this State."

According to the decisions of the Supreme Court of Michigan bearing upon the construction of these sections, a right of action will not arise for the negligent killing of a person by a railroad company, unless the deceased left some one dependent upon him for support, or some one who had a reasonable expectation of receiving some benefit from him during his lifetime. *Chicago & Northwestern Railway* v. *Bayfield*, 37 Michigan, 205; *Van Brunt* v. *Railroad Co.*, 78 Michigan, 530; *Cooper* v. *Lake Shore &c. Railway*, 66 Michigan, 261.

But it seems to us that no question concerning this phase of the case can arise here upon this record. The declaration averred that the action was brought for the benefit of three

daughters and one son of the deceased, whose names were given; and the defendant's plea was merely in the nature of a plea of the general issue, stating simply that the defendant "demands a trial of the matters set forth in the plaintiff's declaration." It is true, that, so far as appears from this record, the only evidence with respect to the beneficiaries of the suit named in the declaration was brought out, apparently inciden- tally, one of plaintiff's witnesses, Mrs. Briscoe, stating that she was the daughter of the deceased, and another witness stating that sometimes Mr. Smith's son went to town to attend to the sale of his farm products.

We should bear in mind, however, that it is not for this court to say that the entire evidence in the case is set forth in the bill of exceptions, for that would be to presume a direct violation of a settled rule of practice as regards bills of excep- tions, viz., that a bill of exceptions should contain only so much of the evidence as may be necessary to explain the bear- ing of the rulings of the court upon matters of law, in reference to the questions in dispute between the parties to the case, and which may relate to exceptions noted at the trial. A bill of exceptions should not include, nor, as a rule, does it include, all the evidence given on the trial upon questions about which there is no controversy, but which it is necessary to introduce as proof of the plaintiff's right to bring the action, or of other matters of like nature. If such evidence be admitted without objection, and no point be made at the trial with respect to the matter it was intended to prove, we know of no rule of law which would require that even the substance of it should be embodied in a bill of exceptions subsequently taken. On the contrary, to encumber the record with matter not material to any issue involved has been repeatedly condemned by this court as useless and improper. *Pennock* v. *Dialogue,* 2 Pet. 1, 15; *Johnston* v. *Jones,* 1 Black, 209, 219, 220; *Zeller's Lessee* v. *Eckert,* 4 How. 289, 297.

But, as the record fails to show that any exception was taken at the trial based upon the lack of any evidence, in this particular, we repeat, it is not properly presented to this court for consideration. If the defendant deemed that the court below

erroneously made no reference in its charge to the jury to the lack of any evidence in the record respecting the existence of any beneficiaries of the suit, it should have called that matter to the attention of the court at that time, and insisted upon a ruling as to that point. Failing to do that, and failing also to save any exception on that point, it must be held to have waived any right it may have had in that particular. The only exception taken on the trial and embodied in the assignment of errors that can, by any latitude of construction, be held to refer to this point is the eighth request for instructions, which was refused, and which refusal is made the basis of the sixth assignment of errors. That request is as follows : "The court is requested to instruct the jury that under the evidence in this case the plaintiff is not entitled to recover, and their verdict must be for defendant." But the context and the reason given by the court for its refusal to give the instruction clearly show that that request was not aimed at this point, but related solely to the question of negligence on the part of the defendant company and the alleged contributory negligence of the party killed. That this request for instructions meant what the court understood it to mean, and had no reference whatever to the question of evidence respecting the existence of the beneficiaries named in the declaration, is further shown by the fact that the court in its general charge assumed that such evidence had been introduced, and also by the fact that the ninth request of the plaintiff in error for instructions to the jury likewise proceeded on that assumption. That request is as follows: "The damages in cases of this kind are entirely pecuniary in their nature, and the jury must not award damages beyond the amount *the evidence shows the children would probably have realized from deceased had he continued to live.* Nothing can be given for injured feelings or loss of society."

Furthermore, this assignment of error is too broad and general, under the 21st rule of this court, to bring up such a specific objection as it seeks to do. This court should not be put to the labor and trouble of examining the whole of the evidence to see whether there was enough for the verdict

below to have rested upon. But any objection made to the non-existence of evidence to support the verdict and judgment below should, in the language of the rule, "set out separately and particularly each error asserted and intended to be urged." *Van Stone* v. *Stillwell & Bierce Manufacturing Co.*, 142 U. S. 128. In our opinion, therefore, this point raised by the plaintiff in error is without merit. As to whether, as a matter of fact, there was evidence respecting the existence of any beneficiaries to this action, we do not, of course, express any opinion. In the view above taken of the matter, it is not necessary to decide that point. The legal presumption is that there was; and we shall proceed to consider the other assignments of error upon that presumption.

These assignments of error, so far as we can consider them, properly relate to but two questions: (1) Whether there was negligence on the part of the railroad company in the running of the train at the time of the accident; and (2) Whether, even if the company was negligent in this particular, the deceased was guilty of such contributory negligence as will defeat this action.

With respect to the first question, as here presented, the court charged the jury, substantially, that negligence on the part of either the railroad company or the deceased might be defined to be "the failure to do what reasonable and prudent persons would ordinarily have done, under the circumstances of the situation, or doing what reasonable and prudent persons, under the existing circumstances, would not have done;" that the law did not require the railroad company to adopt and have in use, at public crossings, the most highly developed and best methods of saving the life of travellers on the highway, but only such as reasonable care and prudence would dictate, under the circumstances of the particular case; and that the question of negligence, or want of ordinary care and prudence, was one for the jury to decide. In this connection the court gave to the jury the following instruction, which, it is claimed, was erroneous:

"You fix the standard for reasonable, prudent and cautious men under the circumstances of the case as you find them,

according to your judgment and experience of what that class of men do under these circumstances, and then test the conduct involved and try it by that standard; and neither the judge who tries the case nor any other person can supply you with the criterion of judgment by any opinion he may have on that subject."

But it seems to us that the instruction was correct, as an abstract principle of law, and was also applicable to the facts brought out at the trial of the case. There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall constitute ordinary care, under any and all circumstances. The terms "ordinary care," "reasonable prudence," and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case, may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them, that the question of negligence is ever considered as one of law for the court. *Railroad Co.* v. *Pollard*, 22 Wall. 341; *Delaware &c. Railroad* v. *Converse*, 139 U. S. 469; *Thompson* v. *Flint &c. Railway*, 57 Michigan, 300; *Lake Shore &c. Railway* v. *Miller*, 25 Michigan, 274; *Railway* v. *Van Steinberg*, 17 Michigan, 99; 122; *Gaynor* v. *Old Colony & Newport Railway*, 100 Mass. 208, 212; *Marietta &c. Railroad Co.* v. *Picksley*, 24 Ohio St. 654; *Pennsylvania Railroad* v. *Ogier*, 35 Penn. St. 60; *Robinson* v. *Cone*, 22 Vermont, 213; *Jamison* v. *San Jose &c. Railroad*, 55 California, 593; Red-

field on Railways (5th ed.) § 133, ¶ 2; 16 Am. & Eng. Enc. Law, Tit. "Negligence," 402, and authorities cited in note 2. We do not think, therefore, that this instruction was erroneous in any particular.

It is further urged that the court erred in giving to the jury the following instruction:

"If you find from the evidence in this case that the railroad train which killed Elijah Smith was moving at a rate of speed forbidden by the city ordinances, . . . . the law authorizes you to infer negligence on the part of the railroad company as one of the facts established by the proof."

It is said that no evidence was introduced with respect to an ordinance of the city regulating the speed of railway trains. Counsel, in this matter, labor under a misapprehension. The bill of exceptions states that "the ordinance of the city of Detroit prohibiting the running of railroad trains, within the limits of the city, at a greater rate of speed than six miles per hour," was admitted in evidence, over the defendant's objections. And as there was a great deal of evidence introduced on behalf of the plaintiff that the train which killed Mr. Smith was running at a much more rapid rate than the ordinance permitted, the instruction quoted was applicable, and, under the authorities, was as favorable to the defendant as it had the right to demand. Indeed, it has been held in many cases that the running of railroad trains within the limits of a city at a rate of speed greater than is allowed by an ordinance of such city is negligence, *per se. Schlereth* v. *Missouri Pac. Railway*, 96 Missouri, 509; *Virginia &c. Railway* v. *White*, 84 Virginia, 498. But, perhaps, the better and more generally accepted rule is that such an act on the part of the railroad company is always to be considered by the jury as at least a circumstance from which negligence may be inferred in determining whether the company was or was not guilty of negligence. *Union Pac. Railway* v. *Rassmussen*, 25 Nebraska, 810; *Blanchard* v. *Lake Shore &c. Railway*, 126 Illinois, 416; *Meloy* v. *Chicago &c. Railway*, 77 Iowa, 743; *Savannah &c. Railway* v. *Flannagan*, 82 Georgia, 579; *Peyton* v. *Texas &*

*Pac. Railway*, 41 La. Ann. 861.  At any rate, the charge of
the court, in this particular, was not unfavorable to the de-
fendant, under the law.  *Haas* v. *Chicago &c. Railroad*, 41
Wisconsin, 44; *Vicksburg &c. Railroad* v. *McGowan*, 62
Mississippi, 682; *Philadelphia &c. Railroad* v. *Stebbing*, 62
Maryland, 504; *McGrath* v. *New York &c. Railroad*, 63 N. Y.
522; *Houston &c. Railroad* v. *Terry*, 42 Texas, 451; *Bowman*
v. *Chicago &c. Railroad*, 85 Missouri, 533; *Crowley* v. *Bur-
lington &c. Railroad*, 65 Iowa, 658; *Keim* v. *Union R. & T.
Co.*, 90 Missouri, 314; *Ellis* v. *Lake Shore &c. Railroad*, 138
Penn. St. 506; 4 Am. & Eng. Enc. Law, Tit. "Crossings,"
934, and authorities cited in notes 8 and 10.

One of the chief assignments of error, and, perhaps, the one
most strongly relied on to obtain a reversal of the judgment be-
low, is, that the court erred in giving the following instruction:

"So if you find that because of the special circumstances
existing in this case, such as that this was a crossing in the
city much used and necessarily frequently presenting a point
of danger, where several tracks run side by side, and there is
consequent noise and confusion and increased danger; that
owing to the near situation of houses, barns, fences, trees,
bushes or other natural obstructions which afforded less than
ordinary opportunity for observation of an approaching train,
and other like circumstances of a special nature, it was reason-
able that the railroad company should provide special safe-
guards to persons using the crossing in a prudent and cautious
manner, the law authorizes you to infer negligence on its part
for any failure to adopt such safeguards as would have given
warning, although you have a statute in Michigan which
undertakes by its provisions to secure such safeguards in the
way the statute points out.  The duty may exist outside the
statute to provide flagmen or gates or other adequate warn-
ings or appliances, if the situation of the crossing reasonably
requires that—and of this you are to judge—and it depends
upon the general rule that the company must use its privilege
of crossing the streets on its surface grade with due and rea-
sonable care for the rights of other persons using the highway
with proper care and caution on their part.

"So if you find that the train hands kept no proper lookout and managed the train without due caution and reasonable care, you will be authorized to infer negligence on the part of the company as one of the facts established in the case."

That this instruction is in harmony with the general rule of law obtaining in most of the States, and at common law, we think there can be no doubt. The general rule is well stated in *Central Passenger Ry. Co.* v. *Kuhn*, 86 Kentucky, 578, 589, as follows: "The doctrine with reference to injuries to those crossing the track of a railway, where the right to cross exists, is that the company must use such reasonable care and precaution as ordinary prudence would indicate. This vigilance and care must be greater at crossings in a populous town or city than at ordinary crossings in the country; so what is reasonable care and prudence must depend on the facts of each case. In a crossing within a city, or where the travel is great, reasonable care would require a flagman constantly at the crossing, or gates or bars, so as to prevent injury; but such care would not be required at a crossing in the country, where but few persons passed each day. The usual signal, such as ringing the bell and blowing the whistle, would be sufficient;" citing Thompson on Negligence, 417; *Louisville &c. Railroad* v. *Goetz*, 79 Kentucky, 442. And it was accordingly held in that case that a railroad company which had failed to provide a flagman or gates, during the night time when many trains were passing, at a crossing in a thickly populated portion of the city of Louisville, buildings being situated near the track at that point, was guilty of "negligence of the most flagrant character." See also, to the same effect, *St. Louis &c. Railroad* v. *Dunn*, 78 Illinois, 197; *Bentley* v. *Georgia Pac. Railway*, 86 Alabama, 484; *Western Atlantic Railroad* v. *Young*, 81 Georgia, 397; *Troy* v. *Cape Fear &c. Railroad*, 99 N. C. 298; *Bolinger* v. *St. Paul &c. Railroad*, 36 Minnesota, 418.

It is also held, in many of the States, (in fact, the rule is well nigh, if not quite, universal,) that a railroad company, under certain circumstances, will not be held free from negligence, even though it may have complied literally with the

terms of a statute prescribing certain signals to be given, and other precautions to be taken by it, for the safety of the travelling public at crossings.    Thus in *Chicago &c. Railroad* v. *Perkins*, 125 Illinois, 127, it was held that the fact that a statute provides certain precautions will not relieve a railway company from adopting such other measures as public safety and common prudence dictate.    And in *Thompson* v. *New York &c. Railroad*, 110 N. Y. 636, it was held that the giving of signals required by law upon a railway train approaching a street crossing does not, under all circumstances, render the railway company free from negligence, especially where the evidence tends to show that the train was being run at an undue and highly dangerous rate of speed through a city or village.    See also *Louisville &c. Railway* v. *Commonwealth*, 13 Bush, 388; *Weber* v. *N. Y. Central Railroad*, 58 N. Y. 451. The reason for such rulings is found in the principle of the common law that every one must so conduct himself and use his own property as that, under ordinary circumstances, he will not injure another, in any way.    As a general rule, it may be said that whether ordinary care or reasonable prudence requires a railroad company to keep a flagman stationed at a crossing that is especially dangerous, is a question of fact for a jury to determine, under all the circumstances of the case, and that the omission to station a flagman at a dangerous crossing may be taken into account as evidence of negligence; although in some cases it has been held that it is a question of law for the court.    It seems, however, that before a jury will be warranted in saying, in the absence of any statutory direction to that effect, that a railroad company should keep a flagman or gates at a crossing, it must be first shown that such crossing is more than ordinarily hazardous: as, for instance, that it is in a thickly populated portion of a town or city; or, that the view of the track is obstructed either by the company itself or by other objects proper in themselves; or, that the crossing is a much travelled one and the noise of approaching trains is rendered indistinct and the ordinary signals difficult to be heard by reason of bustle and confusion incident to railway or other business; or,

by reason of some such like cause : and that a jury would not be warranted in saying that a railroad company should maintain those extra· precautions at ordinary crossings ·in the country. The following cases are illustrative of various phases of the rules we have just stated : *Eaton* v. *Fitchburg Railroad,* 129 Mass. 364; *Bailey* v. *New Haven Railroad,* 107 Mass. 496 ; *Pennsylvania Railroad* v. *Matthews,* 36 N. J. Law, 531 ; *Pennsylvania Railroad.* v. *Killips,* 88 Penn. St. 405 ; *Kansas Pac. Railroad* v. *Richardson,* 25 Kansas; 391 ; *State* v. *Philadelphia &c. Railroad,* 47 Maryland, 76 ; *Welsch* v. *Hannibal &c. Railroad,* 72 Missouri, 451; *Frick* v. *St. Louis &c. Railroad,* 75 Missouri, 595 ; *Pittsburgh &c. Railway* v. *Yundt,* 78 Indiana, 373; *Hart* v. *Chicago &c. Railway,* 56 Iowa, 166; *Kinney* v. *Crocker,* 18 Wisconsin, 74.

But it is insisted that these rules are none of them applicable to this case, because the whole subject of signals and flagmen, gates, etc., at crossings in Michigan is regulated by statute. The claim is put forth that, under the statute of Michigan, (3 How. Stat. § 3301,) an officer of the State, known as the railroad commissioner, is charged with the duty of determining the necessity of a flagman at any and all crossings in the State, and that, unless an order had been made by him requiring a railroad company to station a flagman at any particular crossing, the failure on the part of the company to provide such flagmen could not even be considered as evidence of negligence; and that in this case no such order by the commissioner is shown to have been made. *Battishill* v. *Humphreys,* 64 Michigan, 494 ; *Guggenheim* v. *Lake Shore &c. Railway,* 66 Michigan, 150; and *Freeman* v. *Railway Company,* 74 Michigan, 86, are relied on as sustaining this contention.

If the construction of this statute by the Michigan courts be as claimed by the defendant, of course this court would feel .constrained to adopt the same construction, even if we thought it in conflict with fundamental principles of the law of negligence to which we have referred in a preceding part of this opinion, obtaining in other States. *Meister* v. *Moore,* 96 U. S. 76 ; *Bowditch* v. *Boston,* 101 U. S. 16; *Flash* v.

*Conn,* 109 U. S. 371; *Bucher* v. *Cheshire Railroad Co.,* 125 U. S. 555; *Detroit* v. *Osborne,* 135 U. S. 492.

But do the Michigan cases cited sustain the defendant's contention? We think not; but rather that they support the rule laid down by the court below in the charge excepted to. In *Battishill* v. *Humphreys,* the court below had refused to instruct the jury, upon a request by the plaintiff in error, that " the railroad law of this State (art. 4, § 3) lays upon the railroad commissioner of the State the duty of determining the necessity of establishing a flagman upon any particular street crossing of a railway; and upon the testimony and under the pleadings in this case, the absence of a flagman at Summit avenue is no evidence of any negligence upon the part of the receivers."

Such refusal having been assigned as error, the Supreme Court of the State held that the instruction should have been given, and accordingly reversed the judgment below. In the opinion the court said:

" I think the second request of the defendants should have been given. No reference was made to this matter in the charge of the court; and it may well be considered, when a request is specifically made, and it is refused, that the jury will take such refusal as a liberty to infer that the request is wrong in law, unless some explanation is made by the court of the reasons for such refusal to rebut such natural inference. . . . Evidence of this nature was introduced, and the request which ought to have been given denied, and we cannot say it did not have some influence upon the jury in determining the question of the negligence of the company."

If this decision stood alone there would be much force in the contention of the defendant in this case; but the other decisions referred to have explained it, and apparently qualified the broad doctrine laid down in it, bringing the rule in Michigan in harmony with the generally accepted rule obtaining elsewhere.

Thus in *Guggenheim* v. *Lake Shore Railway,* although it was stated in the opinion that " the railroad company is not compelled to keep a watchman or flagman at every street or

road-crossing where a jury, upon a trial like this, might think it necessary to have one stationed;" and that "this matter is regulated under the statutes of our State by the railroad commissioner;" yet it was held that when the company itself so obstructs its track that its trains cannot be seen by travellers approaching a crossing, or so that the ordinary signals required by statute will not be sufficient to warn travellers of the approach of trains, "some additional warning must be given, and there are cases where a flagman would be necessary to acquit the company of negligence." And it was further held that the trial court was right in instructing the jury that it was the duty of the company to give to the traveller on the highway due and timely warning of the coming of its trains and the approaching danger "either by bell or whistle, or both, or by some other means, and in such a way as to give him an opportunity, by the exercise of due diligence and care, to meet and guard himself from danger;" thus showing that a duty on the part of the railway company to provide against accidents at crossings may and does exist outside of the statute.

But the case of *Freeman* v. *Railway Company*, which, so far as we have examined, is the latest adjudication of the Supreme Court of Michigan on the subject, contains the most thorough discussion of the general question of any of those referred to by the defendant; and, so far from sustaining its contention, is directly opposed to it and in line with the instruction given by the court below in this case. In that case one of the questions considered by the court was, whether it was negligence on the part of the railway in not providing a flagman at the crossing of Genesee street in the city of Marquette, the railroad commissioner not having required it to station one there. The facts in relation to the hazardous nature of the crossing are referred to particularly in the opinion of the court from which we quote. In considering the question the court went very fully into the merits of it, in all its bearings, and said: "The contention of the defendant is that it was not negligence. It is claimed that under the statutes of this State the duty of determining where flagmen shall be stationed devolves upon the railroad commissioner; and that in

order to hold defendant liable for such negligence in this case, it should have appeared in proof that the railroad commissioner had ordered a flagman to be stationed at this crossing, and that his orders were not obeyed; or that the crossing was such an exceptionally dangerous one that a common law duty was imposed on the defendant to keep a flagman at that point; and that no showing of this kind was made."

Replying to this contention, the court said: "We think the judge below ruled correctly on this point and in accordance with our previous decisions. The jury were instructed, substantially, that it is not the law of this State that at every road or street crossing in a village or city a railroad company is bound to place a flagman. The law puts upon the railroad commissioner the duty of determining the necessity of establishing a flagman upon any particular street crossing of a railroad, and the absence of a flagman at Genesee street crossing, where the accident occurred, is of itself no evidence of negligence upon the part of the defendant. And the plaintiff must show that the circumstances of the crossing are such that common prudence would dictate that the railroad company should place a flagman there, or his equivalent. That before the jury could find this it must be made to appear to them the i the danger at the crossing was altogether exceptional — tnar there was something about the case rendering ordinary carr on the part of the witness Grant, (the driver of the carriage which was run over and broken up at the crossing,) an insufficient protection against injury, and therefore made the assumption of the burden of a flagman on the part of the railroad company a matter of common duty for the safety of people crossing. 'You have, as I said before, been at this crossing. You have seen the situation. You have seen its relation to travel and to the city; and it is for you to determine, if you reach that point, under all the circumstances of the case, whether or not it was negligence, under the instructions I have given you and the evidence, not to have a flagman there.'"

The Supreme Court then went on to say: "If any fault can be found with this charge, it was too favorable to the defendant, in that it connected the necessity of keeping a flagman

at the crossing, with the use of ordinary care on the part of
Grant. · The duty of retaining a flagman at this point did not
depend on the question whether Grant, in this particular
instance, could by common prudence have avoided this col-
lision or not. It depended rather upon the situation of the
crossing, its relation to the travel upon the street generally,
and the facilities afforded, not only the travellers on the street,
but the trainmen on the cars, to avoid collisions and accidents
of this kind, without a flagman to give warning of approach-
ing trains.

"I think the jury were warranted in finding it to be neg-
ligence in the defendant in not providing a watchman at this
point. It seems that to the south from Genesee street there
was a steep up-grade, so that a train of loaded cars must, in
order to ascend the same, cross the street at a higher rate of
speed than would, considering the situation of the crossing,
be prudent to the safety of passers on the street, without
warning of the train's approach. A train coming from the
north could not be seen at all by those travelling on the street
in the direction Grant was driving, until the traveller was
within 40 feet of the track, and the train within from 150 to
175 feet of the centre of the street. And the engineer on the
train, being lower down in his cab than a man in a buggy,
could not get his eye into Genesee street west of the track, as
·was the fact in this case, until the locomotive was within 60
or 75 feet from the crossing, and then his vision would only
extend 40 or 50 feet west of the track on the street. Under
such circumstances, a train ought to run over this crossing so
that it could be stopped at once, or a flagman ought to be sta-
tioned where he could give warning of its approach. When
an engineer, at a distance beyond 75 feet from the crossing of
a street in a city like Marquette, cannot see into the street
except the straight line thereof where the track crosses, and
the traveller cannot see even the top of the locomotive until
he gets within 40 feet of the track, something more than
·ordinary pains to prevent accidents is incumbent both on the
railroad company and also on the traveller, if such traveller is
acquainted with the situation.

"In *Battishill* v. *Humphreys*, we held, under the pleadings and testimony in the case, that the absence of a flagman at Summit avenue crossing in Detroit could not be considered negligence in the railroad company, as the railroad commissioner had not determined that it was necessary to maintain one there. *But nothing was said or intended to be said, in that opinion, that there could be no negligence, in any case, in not maintaining a flagman at a street crossing unless such commissioner had ordered one to be stationed there.* In *Guggenheim* v. *L. S. & M. S. Ry. Co.* the law in this respect is laid down substantially as the Circuit Judge in this case instructed the jury."

We have quoted extensively from the opinion in the case last referred to because it seems to us a complete refutation of the contention of the defendant herein, and states the law, on this point, substantially as the court below did in its charge to the jury in this case, and because, also, the facts and circumstances relative to the railroad crossing there were so very similar to those in this case, that it makes it a very strong authority in support of the judgment below. The underlying principle in all cases of this kind which requires a railroad company not only to comply with all statutory requirements in the matter of signals, flagmen and other warnings of danger at public crossings, but many times to do much more than is required by positive enactment, is, that neither the legislature nor railroad commissioners can arbitrarily determine in advance what shall constitute ordinary care or reasonable prudence in a railroad company, at a crossing, in every particular case which may afterwards arise. For, as already stated, each case must stand upon its own merits and be decided upon its own facts and circumstances; and these are the features which make the question of negligence primarily one for the jury to determine, under proper instructions from the court. We think, therefore, that, in that portion of the charge which we have been discussing, the court below committed no error to the prejudice of the defendant.

But it is claimed that the last paragraph of that portion of the charge last above quoted, referring to the question whether

or not the trainmen kept a proper lookout and managed the train in a prudent and cautious manner, was erroneous, because, so it is claimed, " there was no evidence that the train hands kept no proper lookout, etc." This contention is also without merit. There was evidence that the ordinary signals of blowing the whistle and ringing the bell at the crossing were not given, and that the train was running at a more rapid rate than was permitted by the city ordinance. If the jury believed that evidence they must necessarily have found that the trainmen did not keep a proper lookout, and did not manage the train in a prudent and careful manner. The instruction complained of was certainly not prejudicial to the defendant in this particular, since it referred to matters concerning which evidence had been admitted, and was correct on principle. The most that can be said against it is that the substance of it had perhaps been given in another portion of the charge, and the court below need not have given it; but the giving it in different language, while not necessary, and while also correct practice might require that it be not given, was not reversible error. So far, then, as the instructions of the court below, upon the first question, as above arranged, are concerned, we conclude there was no error prejudicial to the defendant. And this leads to a consideration of the question of the alleged contributory negligence on the part of the deceased.

It is earnestly insisted that, although the defendant may have been guilty of negligence in the management of its train which caused the accident, yet the evidence in the case given by the plaintiff's own witnesses, shows that the deceased himself was so negligent in the premises that but for such contributory negligence on his part the accident would not have happened; and it is, therefore, contended that the court below should, as matter of law, have so determined, and it not having done so, this court should so declare, and reverse its judgment. To this argument several answers might be given, but the main reason why it is unsound is this: As the question of negligence on the part of the defendant was one of fact for the jury to determine, under all the circumstances of the case, and under proper instructions from the court, so

also the question of whether there was negligence in the deceased which was the proximate cause of the injury, was likewise a question of fact for the jury to determine, under like rules. The determination of what was such contributory negligence on the part of the deceased as would defeat this action, or, perhaps, more accurately speaking, the question of whether the deceased, at the time of the fatal accident, was, under all the circumstances of the case, in the exercise of such due care and diligence as would be expected of a reasonably prudent and careful person, under similar circumstances, was no more a question of law for the court than was the question of negligence on the part of the defendant. There is no more of an absolute standard of ordinary care and diligence in the one instance than in the other. This rule is sustained by the Michigan authorities, (*Mynning* v. *Detroit &c. Railroad*, 64 Michigan, 93; *Underhill* v. *Chicago &c. Railway*, 81 Michigan, 43; *Baker* v. *Railroad Co.*, 68 Michigan, 90; *Engel* v. *Smith*, 82 Michigan, 1;) and its correctness is apparent from an examination and analysis of the generally accepted definitions of contributory negligence, as laid down by the courts and by text-writers. Without going into a discussion of these definitions, or even attempting to collate them, it will be sufficient for present purposes to say that the generally accepted and most reasonable rule of law applicable to actions in which the defence is contributory negligence may be thus stated: Although the defendant's negligence may have been the primary cause of the injury complained of, yet an action for such injury cannot be maintained if the proximate and immediate cause of the injury can be traced to the want of ordinary care and caution in the person injured; subject to this qualification, which has grown up in recent years, (having been first enunciated in *Davies* v. *Mann*, 10 M. & W. 546,) that the contributory negligence of the party injured will not defeat the action if it be shown that the defendant might, by the exercise of reasonable care and prudence, have avoided the consequences of the injured party's negligence. *Inland & Seaboard Coasting Co.* v. *Tolson*, 139 U. S. 551, 558, and cases cited; *Donohue* v. *St. Louis &c. Railroad*, 91 Missouri, 357;

*Vicksburg &c. Railroad* v. *Patton*, 31 Mississippi, 156; *Deans* v. *Wilmington &c. Railroad*, 107 N. C. 686; 2 Thompson on Negligence, 1157; Cooley on Torts, (1st Ed.,) 675; 4 Am. & Eng. Enc. Law, Tit. "Contributory Negligence," 30, and authorities cited in note 1.

With respect to the question of the alleged contributory negligence of the deceased, the court charged the jury as follows:

"Turning now to the conduct of Smith, and subjecting that to the same test of reasonable prudence and cautious conduct of a person in his situation, you will understand that, no matter how negligently the company ran this train or how unreasonably they neglected to provide sufficient safeguards at the crossing, if he brought his death upon himself by his own negligence, his administrator is not entitled to a verdict in this suit.

"So if you find that he was familiar with this crossing and its dangers, one and all of them; that he frequently used it and knew how to act in using it to protect himself; and that under the special circumstances which you find he failed to act as a prudent and cautious man should have acted from beginning to end, or that he omitted some precaution that a prudent man ought to have taken, whereby he lost his life, the plaintiff cannot recover. He should use all his faculties of seeing and hearing; he should approach cautiously and carefully; should look and listen and do everything that a reasonably prudent man would do before he attempted to make the crossing. Scrutinize his actings and doings under the light of the then situation; the nature and character of the crossing; the fact of the difficulty of observation; the time of day and the probability of danger from passing trains; the fact that there were other railroads side by side; that another train on one of these was actually approaching and passing; the noise and confusion; possibly the noise and confusion of signals; and every fact and circumstance bearing on the case to influence his conduct then and there, under those circumstances and not any other circumstances; and say upon your fair and impartial judgment whether he acted as

a reasonable and prudent man should have acted and with the due care and caution demanded by the exigencies of·the occasion.

"If he did so act, and the railroad company was negligent, his administrator is entitled to your verdict. If he did not so act, the railroad company is entitled to your verdict, whether it was negligent or not. If it was not negligent, it is entitled to your verdict, no matter how Smith acted."

These instructions are so full and complete, and are in such entire accord with the rules of law applicable to cases of this character, that no fault whatever can be found with them. They embody, substantially, the entire law of the case, on the questions under consideration, and were applicable to every feature of it. Indeed, if they are open to any criticism at all it is that they were more favorable to the defendant than it had the right to demand, under the rules above stated, since they enabled the defendant to be relieved from any liability in the case, if the deceased had been guilty of contributory negligence, even though it might, by the exercise of ordinary care and prudence, have averted the results of such negligence. Mr. Pierce, in his work on railroads, p. 343, after a review of the authorities on the subject, lays down, substantially, the same general rule as to the care required of travellers at railway crossings, in the following terms: " A traveller upon a highway, when approaching a railroad crossing, ought to make a vigilant use of his senses of sight and hearing, in order to avoid a collision. This precaution is dictated by common prudence. He should listen for signals, and look in the different directions from which a train may come. If by neglect of this duty he suffers injury from a passing train, he cannot recover of the company, although it may itself be chargeable with negligence, or have failed to give the signals required by statute, or be running at the time at a speed exceeding the legal rate." See also, generally, upon this question, 4 Am. & Eng. Enc. Law, 68–78, and authorities cited in the notes.

The recent case of *Sullivan* v. *New York &c. Railroad Co.*, from Massachusetts, which, in advance of the official

reports, is published in 28 N. E. Rep. 911, is so similar to the one at bar on this question that it deserves more than a passing notice. The substance of the case is stated in the syllabus by the reporter as follows:

"Plaintiff, a woman about 65 years of age, of ordinary intelligence, and possessed of good sight and hearing, was injured at a railroad crossing. The railroad had been raised several feet higher than the sidewalk, and the work of grading was still unfinished, and the crossing in a broken condition. There were three tracks, and a train was approaching on the middle one. The view was obstructed somewhat with buildings, but after reaching the first track it was clear. The evidence showed that the plaintiff was familiar with the passing of trains; that she did not look before going upon the track; and that, if she had looked, she could have seen the train a quarter of a mile. When the whistle sounded she looked directly at the train, and hurried to get across. Plaintiff testified that she looked before going upon the track, but did not see the train or hear the whistle; that the only warning she had was the noise of its approach, after she was on the first track; and that she did not then look to see where it was, or on which track it was coming, but started to cross as fast as possible, and in so doing stumbled and fell between the rails. The signals required by the statutes were not given: *Held*, that it did not appear as matter of law that plaintiff was guilty of gross or wilful negligence, and that it was proper to submit the question to the jury."

See also *Evans* v. *Lake Shore & Mich. South. Railway*, (Mich.) 50 N. W. Rep. 386; *Ellis* v. *Lake Shore & Mich. South. Railway*, 138 Penn. St. 506; *Brown* v. *Tex. & Pac. Railway*, 42 La. Ann. 350; *Heddles* v. *Chicago &c. Railway*, 77 Wisconsin, 228; *Parsons* v. *New York &c. Railroad*, 113 N. Y. 355; *Cooper* v. *Lake Shore & Mich. South. Railway*, 66 Michigan, 261.

Nothing was said by this court in *Railroad Company* v. *Houston*, 95 U. S. 697, or in *Schofield* v. *Chicago & St. Paul Railway*, 114 U. S. 615, which are relied upon by the defendant, that in anywise conflicts with the instructions of the court

below in this case, or lays down any different doctrine with respect to contributory negligence. *Delaware Railroad* v. *Converse*, 139 U. S. 469. Nor do the Michigan authorities, which are relied upon, when read in the light of the particular facts and circumstances of each separate case, enunciate a different doctrine; but, so far as applicable, they tend to sustain the instructions objected to.

It is also insisted that the court erred in refusing the following request of the defendant for instructions:

"If you find that the deceased might have stopped at a point fifteen or eighteen feet from the railroad crossing, and there had an unobstructed view of defendant's track either way; that he failed so to stop; that instead the deceased drove upon the defendant's track, watching the Bay City train, that had already passed, and with his back turned in the direction of the approaching train, the deceased was guilty of contributing to the injury, and your verdict must be for the defendant, although you are also satisfied that the defendant was guilty of negligence in the running of the train in the particulars mentioned in the declaration."

The reason given by the court for refusing this request was that "it is too much upon the weight of the evidence and confines the jury to the particular circumstance narrated without notice of others that they may think important." This reason is a sound one. In determining whether the deceased was guilty of contributory negligence the jury were bound to consider *all* the facts and circumstances bearing upon that question, and not select one particular prominent fact or circumstance as controlling the case to the exclusion of all the others. *Cooper* v. *Lake Shore & Mich. South. Railway Co.*, *supra*; *Baltimore etc. Railroad* v. *Kane*, 69 Maryland, 11. Moreover, the substance of the request, so far as it was correct, had already been given, in general terms, by the court in that part of the charge referring to the degree of care and caution required of the deceased in approaching the railroad crossing, in order to free him from the charge of contributory negligence; and the refusal of the court to give it again, in different language, was not error. *Erie Railroad Co.* v. *Winter*, 143 U. S. 60, 75.

There are no other questions in the case that call for special consideration. We have endeavored to consider and pass upon all of the material ones that have been discussed by counsel both in their brief and in oral argument at the bar. We do not think that it has been shown that any error was committed in the trial below which was prejudicial to the rights of the defendant.

*Judgment affirmed.*