SWIFT & CO. v. SANDY et ux.

(Circuit Court of Appeals, Third Circuit.  November 24, 1908.)

No. 16.

1. NEGLIGENCE (§ 4*)—"ORDINARY CARE"—"REASONABLE PRUDENCE."

The terms, "ordinary care" and "reasonable prudence," as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined.  What may be "ordinary care" in one case may, under different surroundings and circumstances, be gross negligence.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 6; Dec. Dig. § 4.*

For other definitions, see Words and Phrases, vol. 6, pp. 5029–5042; vol. 8, pp. 7739, 7740; vol. 7, p. 5976.]

2. NEGLIGENCE (§ 136*)—QUESTIONS FOR COURT OR JURY.

When, under a given state of facts, reasonable men may fairly differ on the question as to whether there was negligence or not, the determination of the matter is for the jury.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 298; Dec. Dig. § 136.*]

3. MUNICIPAL CORPORATIONS (§ 62*)—STREETS—NEGLIGENT USE—INJURIES—FRIGHT.

Where plaintiff fell in the street and was injured in endeavoring to save herself from imminent bodily harm by collision with defendant's team, negligently driven around a corner, and approaching her as she was crossing the street, and the fright which preceded and accompanied plaintiff's fall was only such as would usually be associated with the hurried effort to avoid impending danger, a contention that plaintiff was so frightened or bewildered that she collapsed, and that her fall resulted from fright caused by defendant's negligence, for which she could not recover, was unsustainable.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 62.*]

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 159 Fed. 271.

H. S. Sparhawk, for plaintiff in error.

Paul Reilly, for defendants in error.

Before DALLAS and GRAY, Circuit Judges, and ARCHBALD, District Judge.

DALLAS, Circuit Judge.  This writ of error has brought up the record in an action by Samuel B. Sandy and Mary A. Sandy, his wife, to recover for personal injury to Mrs. Sandy, caused, as alleged, by negligence for which the defendant below, the plaintiff here, was averred to be responsible.  The specifications of error relied upon are, in substance, the denial of binding instructions for the defendant, and the refusal to enter judgment in its favor, non obstante veredicto; and the only question they present is whether or not the evidence as a whole justified the submission of the case to the jury.  The material facts as shown by the proofs are incontrovertible.  One James Mattern, in the pursuit of his employment by the defendant, was driving a team hauling a heavy wagon northwardly on the left-hand side of Germantown avenue, Philadelphia, and had about reached Duval street when

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Mr. and Mrs. Sandy were about two-thirds of the distance across that street in course of crossing from its northerly to its southerly side, on the westerly side of Germantown avenue. Under these circumstances, and without notice or warning, the team referred to was abruptly turned westwardly to Duval street, so that, as Mrs. Sandy testified, she knew nothing of it until she saw the horses "loom up in front" of her, and the next thing she realized was that she was being picked up out of the street. Mr. Sandy testified that the team swung around the corner into Duval street so quickly that if he had not "switched back" the end of the pole would have struck him, and that, though Mrs. Sandy was not actually struck either by the pole or the horses, she would have been if the driver had not pulled up just as both Mr. and Mrs. Sandy "stepped back a little bit," and she fell.

If this testimony was true, and it seems that the jury believed it, it certainly warranted a finding that Mrs. Sandy's mishap resulted from an effort on her part to escape being struck or run over, and whether this situation of danger was or was not due to lack of ordinary prudence on the part of the driver was for determination by the jury. There was no serious dispute about the primary facts, it is true, but the ultimate fact—the existence or nonexistence of negligence—was for deduction from the former, and the making of such deductions is peculiarly within the province of the appointed triors of all issues of fact.

"There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall constitute ordinary care, under any and all circumstances. The terms 'ordinary care,' 'reasonable prudence,' and such like terms as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court." Grand Trunk Railway Co. v. Ives, 144 U. S. 408, 417, 12 Sup. Ct. 679, 682, 36 L. Ed. 485.

It has been argued with much zeal and ingenuity that Mrs. Sandy was "so frightened or bewildered as simply to collapse," and that therefore, her fall, though it resulted from "fright caused by the negligence of another," could not entitle her to damages. But it must suffice to say of this contention that we have not been convinced of its relevancy. While, of course, Mrs. Sandy was startled and alarmed, the evidence shows that she fell in endeavoring to save herself from imminent bodily harm, and that the fright which preceded and accompanied her fall was merely such as usually is associated with a hurried effort to avoid an impending danger.

The judgment is affirmed.