GOTTLIEB WENNINGER, APPELLEE, V. LINCOLN TRACTION COMPANY, APPELLANT.

FILED MAY 7, 1909. No. 15,655.

1. **Appeal: EVIDENCE.** A verdict upon conflicting evidence will not be set aside, where there is sufficient evidence to support it.

2. **Street Railways: NEGLIGENCE: QUESTION FOR JURY.** Where there is evidence tending to show that the plaintiff was negligently driving at a trot across a street intersection without observing

28

a street car which was approaching at a right angle, that the motorman saw that the car would strike plaintiff's team unless stopped, and that he might have stopped the car by the exercise of ordinary care, it is not error to submit to the jury the question of the existence of negligence in thus failing to stop the car.

APPEAL from the district court for Lancaster county: LINCOLN FROST, JUDGE. *Affirmed.*

*Clark & Allen,* for appellant.

*George A. Adams, Wilmer B. Comstock,* and *Halleck F. Rose, contra.*

LETTON, J.

While the plaintiff was driving two horses attached to a cart across the intersection of "O" and Eleventh streets in the city of Lincoln, he was struck by a street car belonging to the defendant, and his horses and himself injured. It is charged in his petition that the collision was the result of the negligence of defendant in propelling the car at a negligently high rate of speed; that no proper lookout for persons or vehicles approaching the track was kept, and that proper diligence was not observed to stop the car after the motorman became aware of the plaintiff's perilous situation. The answer is a general denial, together with a plea of contributory negligence, which is denied by the reply. At the trial the district court submitted to the jury only two questions: Whether the car was being operated at a high and dangerous rate of speed, and whether the defendant observed proper care and diligence to prevent injury after discovering the dangerous situation of the plaintiff. There was a verdict for the plaintiff, and defendant has appealed.

While many witnesses testified, it is difficult to get a clear and definite idea of just what occurred at the time of the accident. The plaintiff testifies that shortly after 6 o'clock in the evening he was driving south on Eleventh street, across the intersection of "O" street with that

thoroughfare; that as he approached the intersection he saw a west-bound car approaching on "O" street on the street car track nearest him, and that his view toward any east-bound car upon the other track was cut off and obstructed by two large furniture vans which were passing; that as he drove across the intersection the car came from the west at full speed; that he could not get back because there were teams behind him, and he could not go forward because there were many people coming out of the stores and on the street at that hour; that the car struck the horses at a point a little west of the center of the street, knocked them down, and pushed them until they were over the crossing on the east side of the street. Another witness testifies he saw the car coming "at a pretty good gait"; that plaintiff was on the west side of the center of the street when struck, and the car knocked him over to the east side of the street. Other witnesses for the plaintiff testify substantially to the same effect in respect to the place where the horses were struck and the distance they were carried or pushed by the car before it stopped. Still another witness testifies that the car approached apparently "at a rapid gait—very rapid gait." The witnesses for the defendant substantially agree that there was no obstruction to the view at the intersection; that the plaintiff as he approached was driving at a trot, "a keen trot" one of the witnesses says, and that he was talking to a man who was riding with him in the cart; that the plaintiff might have seen the car approaching from the west as he drove southward if he had looked, and that he drove on the tracks directly in front of the approaching car; that the car was under control and was slowing down to stop at the east crossing of the street at the time the collision took place. A witness for defendant, who was a passenger on the car and was standing in the vestibule beside the motorman at the time the accident happened, testified on cross-examination as follows: "Q. You say you saw Wenninger when he got to Eleventh? A. Yes; we got to the crossing, the first I

noticed. Q. And you told the motorman you was going to collide with him? A. I said, if we did not stop, we would collide with him. Q. Then what did the motorman do? A. Why, I believe he cussed. Q. Cussed? A. Yes, sir. Q. Who did he cuss? A. Why, nobody in particular; just drivers in general. Q. Just general cussing? A. Yes; people. Q. He did that instead of putting on his brake? A. Oh, he did put on his brake. Q. Did put it on vigorously? A. He started to put on the brake, you know, like a man would stop his car at the other crossing. Q. But that was after you told him, if this man didn't stop, he would collide with him? A. He saw it at the same time I did. Q. You also told him about those words? A. Yes, sir. Q. That if this man don't stop, you will collide with him? A. Yes, sir. Q. What did he say? Just give the words as near as you can. A. I don't know just as particularly now just what he did say, it is so long ago. Q. No idea what he did say? A. No, except he answered me. He swore. Q. You don't remember what he said? A. Well, blankety blank, something. Q. What? A. I say it was blankety blank something. Q. And then did he tighten up his brake? A. He started to set the brake; yes; that is, started to tighten it. Q. Did he start that before he commenced to swear, or while he was swearing, or after he got through? A. It seemed to me he used it to emphasize his motions." This witness further testified that, as the plaintiff was approaching the track, he looked up, saw the car, pulled his horses to the left, and struck them with the whip, and was pulling them away from in front of the car when they were struck.

The court submitted the question of the existence of negligence and contributory negligence to the jury, and also an instruction based on the doctrine of the last clear chance. The defendant argues that there was not sufficient evidence, in regard to negligence on the part of the motorman in failing to stop the car after he became aware of plaintiff's position, to warrant submitting this ques-

tion to the jury. We cannot agree with this contention. While there is conflicting evidence upon this question, the testimony quoted shows that, before the car reached the intersection, a passenger saw what the probable result would be unless the car was stopped, and warned the motorman. If the car was proceeding as slowly as defendant's witnesses testify, the motorman could easily have stopped it between the intersection and the point near the middle of the street, where the horses were struck. There is no dispute but that the car crossed the entire width of the street, a distance of about 100 feet, before it stopped, and we think the jury were justified in finding that the motorman might have stopped it before the plaintiff was struck, after his attention was called to the manner and direction in which the plaintiff was driving. We think there was no error in submitting this question to the jury.

The question is: Did the motorman exercise ordinary care in attempting to stop the car after the danger became apparent? A recent case in Connecticut is somewhat similar to this in its facts, except that in that case an inexperienced motorman released the brake and caused the car to increase its speed, while in this case the motorman seemed to become angry, and, while tightening the brake to some extent, it would seem that he did not attempt to make a quick stop. In that case Baldwin, C. J., says: "If, after an act of omission constituting negligence on the part of one injured at a railroad crossing, the railroad car or cars might have been so controlled, by the exercise of reasonable care and prudence on the part of those in charge of them, as to avoid the injury, then a failure to exercise such care and prudence would be an intervening cause, and so the plaintiff's negligence no longer a proximate cause, and therefore not a bar to his recovery. *Grand Trunk R. Co. v. Ives*, 144 U. S. 408; *Parkinson v. Concord Street R. Co.*, 71 N. H. 28; *Isbell v. New York & N. H. R. Co.*, 27 Conn. *393." *Smith v. Connecticut R. & L. Co.*, 80 Conn. 268, 17 L. R. A. (n. s.) 707.

The refusal to give instruction No. 9 is also complained of. Without discussing the doctrine of this instruction, a quotation of the latter part will show that it was not error to refuse it. By the latter clause the jury were instructed: "That if you believe from the evidence that the plaintiff could have seen the car by looking or heard it by listening, that he either did not look or listen for it or did not heed what he heard or saw, which would be negligence on his part." This instruction is defective and unintelligible, and it was not error to refuse it.

Complaint is made of the refusal to give several other instructions requested by the defendant. An examination of the whole charge of the court convinces us that the issues in the case were properly submitted to the jury thereby. One or two of the instructions, the refusal to give which is complained of, we think would have been erroneous if given. The others were unnecessary.

The main question in the case is a question of fact. Had the jury found a verdict in favor of the defendant, the evidence would have sustained it, but we cannot grant a new trial for that reason, since there is sufficient evidence, if believed, to support this verdict.

The judgment of the district court is

AFFIRMED.