Mr. Justice Hagner
delivered the opinion o'f the Court:
This indictment contained three counts charging the defendant, Ferdinand Lowenstein, with receiving certain *516 stolen property, knowing it to be stolen; namely, a silver vase of the value of $100, which, in the third count, was laid as the property, of Malcolm' Seaton, administrator of his father, William W. Seaton, with intent to defraud the said Malcolm Seaton, administrator.
In July 1889 a verdict of guilty of receiving stolen property under $35 in value was found under this count; and not guilty, under the other counts. On the same day the defendant was sentenced; and an appeal taken to the General Term from an order overruling a motion for a new trial.
The attorneys who conducted the case up to that point seem then to have abandoned it; and two years afterwards, in July, 1892, a bill of exceptions was signed at the instance of counsel who argued the case before us, but who had no connection with the case originally.
Only a few of the numerous objections presented in the brief were argued, the others having been abandoned by counsel.
The first exception was taken to portions of the charge of the Justice below; and the second, to certain utterances of the court, afterwards, apparently in reply to questions by counsel as to the meaning of certain remarks in the charge.
1. It is insisted there was error in the following language in the charge: “Practically the only fact for you to ascertain and .determihe in this case is whether this stolen property was received by the defendant with the knowledge that it was stolen, and that it was received with the intent to defraud the owner. As to the last element of the offence, you need not be concerned about that, for if you find that be received it with guilty knowledge, the other would necessarily follow; and the intent is not material, if you find that the goods were stolen and were received by the 'defendant, with the knowledge that they were stolen. So that, I have said, practically the only important question of fact for you to determine is whether the defendant in this case received this stolen vase with the knowledge that it was stolen.”
In the supplemental charge, there appears this similar statement:
*517 “The intention is not material if they find the guilty knowledge.”
It is now insisted it was requisite to 'charge in the indictment that the vase was received with an intent to defraud the owner, and equally necessary to prove that intent; and that the Justice erred in informing the jury if they found guilty knowledge in the defendant, that would be sufficient, without further proof that the property was received by him with intent to defraud the owner.
We think the court, in these paragraphs gave the jury effectively a correct statement of law. In Roscoe’s Criminal Evidence, page 895, 8th edition, the author says:
“The intention of the party is not material, provided he knew the goods to be stolen.” Rex vs. Davis, 6 C. & P., 177. In Rex vs. Richardson, 6 C. & P., 335, where it appeared the property was received only for concealment, without profit, the court held, it was not necessary, as in larceny, that the offence should be lucri causa. It is enough if the object be to shelter or accommodate the thief. And an intent to get by the receiving a reward is a fortiori, sufficient to satisfy the statute. I Wharton Criminal Law, Sec. 988.
Mr. Bishop says it is not necessary the receiver should act from motives of personal gain: if his object is to aid the thief it is enough; nor is it material whether a consideration passes between the receiver 'and the thief; the intent must be in some way fraudulent or corrupt.
In 2 East’s Crown Law, 765, Chap. 16, Sec. 163, it is laid down:
“It is sufficient if the goods be in fact received into the possession of the accused in any manner, malo animo; as to favor the thief; or without lawful authority, express or implied from the circumstances.”
It is a curious fact that the law in England on this subject received a great modification from the determination to bring to punishment the notorious Jonathan Wild, whose exploits are made the subject of one of Fielding’s novels! After breaking the laws in various ways, he finally opened *518 a resort in London, to which thieves would bring stolen goods informing him of the name of the owners; with-whom he would negotiate to surrender the goods for a reward, which he divided with the thief. As long as the receiver of stolen goods was prosecuted only as an accessory of, the thief, there could be no conviction of the receiver until the principal had been convicted. The frequent escape of the receiver, on this account, rendered it necessary to make the act of receiving an independent offence; and under that statute passed to meet the previous acquittals, Wild was convicted and executed.
It is true the indictment under our statute must set out that the accused received the goods, knowing them to be stolen, with the intent to defraud the owner thereof; and that this intent must be proved. The familiar principles governing the manner of proof are thus stated -in 3 Greenleaf, Sec. 13:
“Another cardinal doctrine of criminal law, founded in natural justice, is that it is the intention with which an act was done that constitutes its criminality. The intent and the act must both concur, to constitute the crime. Actus non facit reum, nisi mens sit rea. And the intent must therefore be proved, as well as the other material facts in the indictment. The proof may be either by evidence, direct or indirect, tending to establish, the fact; or by inference of law from other facts proved. For though.it is a maxim of law, as well as the dictate of charity, that every person is to be presumed innocent until he is proved to be guilty, yet it is a rule equally sound that every sane person must be supposed to intend that which is the ordinary and natural consequence of his own purposed act. Therefore, ‘ where an act in itself indifferent, becomes criminal if done with a particular intent, there the intent must be proved and found; but where the act is in itself unlawful, the proof of justification or excuse lies on the defendant, and in failure thereof, the law implies a 'criminal intent.’ ”
Sec. 14. “This rule, that every person is presumed to *519 contemplate the ordinary and natiiral consequences of his own acts, is applied even in capital cases.”
Sec. 18. “ But in the proof of an intent to defraud a particular person, it is not necessary to show that the prisoner had that particular person present in his mind at the time; it is sufficient if the act done would have the effect of defrauding him; for the law presumes that the party intended to do that which was the natural consequence of his act. Thus, where on an indictment for uttering forged bank notes, with an intent to defraud the bank, the jury found that the intent was to defraud whoever might take the notes, but that the prisoner had in fact .no intention of defrauding the bank in particular, the conviction was held right; for it is an inference of laiw, that the party,' in such cases, intended to defraud the person who would have to pay the bill or note, if it were genuine.”
So that although it is necessary to set out the intent in an indictment, if required by the statute, yet it is not essential the prosecution should prove such intent by positive testimony, as by the actual admission of such motive by the party. Where a man is indicted for assault with intent to kill, it is scarcely to be expected the accused will admit the existence of such intent. On the contrary, he will positively deny all thought of taking life. But the intent may nevertheless be satisfactorily established by the circumstances of the case, as from the lethal character of the weapon uséd, and the savage or malicious manner in which the attack was made. In the case at bar, although it was necessary to allege and also to prove to the satisfaction of the jury, that the defendant received the vase with intent to defraud the owner, yet the court properly told the jury if they should find the accused knew the goods were stolen when he received them, the intent to defraud the owner could be gathered from the circumstances surrounding the case; as from his conduct, and his own evidence as well as that of others; for it followed as an inevitable presumption in the absence of any proof to the contrary, that he received it with the intent of defrauding the owner.
*520 We have examined the cases cited by the counsel of the traverser upon this point, and all other authorities accessible, and find no support for his contention. In several of them it was held that under a statute similar to ours, the averment of the intent to defraud should appear in the indictment; but nothing further; and the indictment before us conforms to this requirement.
2. It is said, next, that portions of the charge referring to the. testimony as to the reputation of the accused were incorrect and injurious, to the defendant. This part of the charge was as follows:
“The court tells you also, as in all criminal cases, that evidence of good character — character for honesty and integrity — is to be considered, no matter what the charge is, and no matter how strong the direct proof may be apparently, in any case; but you are to receive such evidence of good character as you would all the other circumstances of the case and the other evidence in the case, and treat it as your good judgment, as men, would suggest.' * * * Now, if I go into a store to make a purchase, for instance, and.I put down a five dollar bill, and I receive change as if I had put down a ten dollar bill, and I take that and go out, with the knowledge of the mistake, there is no doubt in the world that I have committed larceny. So that, while it is perfectly proper and right, where parties deal at arms’ length and upon equal footing, to buy at as low a price as they may' or can, with the view of selling at as much as they can, yet if there is a knowledge of the value or weight which exists within the breast of only one party, and a representation is made upon the basis of ‘an entirely different fact, —that is, upon an entirely different estimate of weight — you are to judge whether that would 'be the act of an honest man; and as against reputation you may take evidence of such dealings as this; in order h> ascertain whether the party upon trial is really a man of honesty and integrity. Still, a man who is dishonest, and who is not a man of integrity, may act honestly. A man who would drive a hard or dis *521 honest bargain may, of course, be a party to a perfectly innocent transaction.”
We think this embodied a correct statement. There may be a vast difference, as we know, between a man’s reputation and his character. A man’s character represents what he is. His reputation is what people have hitherto supposed him to be. If the persons whose frauds frequently astonish the country had not previously enjoyed good reputations, they would not have been appointed to positions of trust which gave them the opportunity to defraud. , Their reputation was better than their character.
If an accused person produces respectable witnesses who testify strongly to his fair reputation, the evidence will properly have weight with the. jury as evincing the high improbability that a man with such a reputation could have committed a disgraceful crime: and the argument is so strongly pressed upon a jury, that the positive opinion of witnesses as to reputation may frequently be allowed more than its just weight. Against misunderstandings on this point the jury may well be warned. For, if the accused should afterwards admit on the stand his association with gamblers and lewd and disorderly persons and common thieves, the jury ought properly to conclude that his witnesses had .been mistaken as to his character, however sincere may have been their estimate of his general reputation. And it was 'quite proper in the judge to explain the effect of such revelations upon the previous testimony.
But it is contended that even if these statements of the court were correct, standing by themselves, all this branch' of the charge became censurable because of the introduction of the following paragraphs, which the counsel insist' misstated the evidence of Lowenstein to his evident injury:
“You are to take such evidence, for • instance, in connection with the admitted testimony of the defendant upon the stand, that when he weighed this vase in his hand he estimated it to be twenty-five ounces in weight, and that he then willingly and willfully purchased 'it from the thief — he *522 did not admit that he knew him to be a thief, and I do not mean to intimate that — but he purchased it, and said that he allowed him at the rate of sixteen .ounces and sixty cents an ounce.”
And again,
“I do not mean to intimate that this — which I should characterize as a dishonest transaction, and I think any honest man would; that is, purchasing at sixteen ounces when he knew it .weighed at least twenty-five ounces — should be received by you as a circumstance indicating that he bought the vase with guilty knowledge; yet I say you may offset that circumstance against the general evidence of character from the witnesses who testified as to reputation.”
For proof that these sentences incorrectly set forth the testimony, we are referred to a statement in the record of Lowenstein’s examination, which contains no statement that he testified he had weighed the vase in his hand, or that he estimated its weight at twenty-five ounces, or that he bought it for sixteen ounces.
It is not asserted before us as matter of fact that Lowenstein did not so testify; for the prisoner’s counsel admits he had no knowledge of the subject, as he was not present at the trial, and has no information to the contrary. But the absence of such language from the brief statement in the record of Lowenstein’s testimony, is relied on as sufficient evidence that the statement of the court was unauthorized. It is to be considered, however, that the - record does not purport to contain all the evidence in full, but only an abbreviated statement. Thus with respect to the first witness, it is said, “The United States called as a .witness Malcolm Seaton, who testified, in substance, as follows:”
And there is no .statement in the record that it contains all the evidence given at the trial.
1 The question, therefore, is, whether we shall conclude the justice below made statements of the evidence completely at variance with the facts; and upon this assumption shall reverse the judgment, and award a new trial.
*523 We think the law governing this question is very well laid down in the case of the Grand Trunk Railroad vs. Ives, 144 U. S., 408. There was no evidence in that record that the deceased left a dependent family; and as no right of action under the law of Michigan could arise for the negligent killing of a person by a railroad company unless it appeared the deceased left some one depending upon him for support, the defendant insisted the appellate court was bound to reverse the judgment below on this ground.
But the court declared no question concerning this phase of the case could arise upon the record; although it was true it did not embody any such evidence. Continuing, the court said:'
“We should bear in mind, however, that it is not for this court to say that the entire "evidence in the case is set forth in the bill of exceptions, for that would be to presume a direct violation of a settled rule of practice as regards bills of exceptions, viz.: that a bill of exceptions should contain only so much of the evidence as may be necessary to explain the bearing of the rulings of the court upon matters of law, in reference to the questions in dispute between the parties in the case, and which may relate to> exceptions noted at the trial. A bill of exceptions should not include, nor, as a rule, does it include, all the evidence given on the trial upon questions about which there is no controversy, but which it is necessary to introduce as proof of the plaintiff’s right to bring the action, or of other matters of like nature. If such evidence be admitted without objection, and no point be made at the trial with respect to the matter it was intended to prove, we know of no rule of law which would require that even the substance of it should be embodied in the bill of exceptions subsequently taken. On the contrary, to encumber the record with matter no't material to any issue involved, has been repeatedly condemned by this court as useless and improper.
“But as the record fails to show that any exception was taken at the trial based upon the lack of any evidence in this *524 particular, we repeat, it is not properly presented to this court for consideration. If the defendant- deemed that the court below erroneously made no reference in its charge to the'jury to the lack of any evidence in the record respecting the existence of any beneficiaries of the suit, it should have called that matter to the attention of the court at the time, and insisted upon a ruling as to that point. Failing to do, that, and failing also to save any exception on that point,it must be held to have waived any right it may have had in that particular.”
•Is it possible to believe that the court below, in the case-before us, in the presence of Lowenstein and his counsel, who must be presumed to have been listening to the charge as it was their duty to do, could twice have -made an incorrect statement of Lowenstein’s testimony without any support in the facts; that the statement could have been allowed to pa-ss unchallenged, and that they would have acquiesced in its correctness, by their silence? That the counsel was alert as to his duty in this respect appears from the fact that at the close of the charge he at once called the court’s attention to other statements in the charge he thought required correction; and four paragraphs in the supplemental' charge contain the court’s replies in this colloquy to these questions of counsel. Would not a similar correction have been reported if the court’s statement as to Lowenstein’s testimony had been incorrect, and would not such' alleged misstatement have -been made one of the grounds for a new trial? But we have examined the motion for a new trial made immediately after the verdict, and find it contains no intimation that the court’s statement of the testimony of Lowenstein was incorrect.
In United States vs. Briggs (19 District of Columbia, 585), counsel for the prisoner, in his argument before the jury, made a statement as to the testimony of one of defendant’s witnesses, which the district attorney denied: The prisoner’s counsel insisted the witness had so testified, and the district attorney appealed to the presiding justice, *525 in support of his denial, and the justice replied he had no recollection of any such testimony in the case. The prisoner was convicted, and on motion for a -new trial, it appeared by several affidavits that the witness had undoubtedly so testified; that one of the prisoner’s counsel had so recorded his evidence on his notes at the time; that the senior counsel thinking the remark of the court was a positive ruling against him, concluded it would be wiser to say nothing further on the point, and acquiesced. The motion for a new trial was overruled, and the case was brought here on appeal, and the judgment below reversed upon this point.
In the course of the opinion, we said:
“The defendant’s counsel- declare they considered this intimation of the court as a direction that this line of argument would no longer be allowed. We cannot forbear saying that under the circumstances the counsel for the defendant was to blame in abandoning the point; for he had the right at the time in a proper manner to insist that his recollection of the testimony was correct; and to ask.that the witness should be recalled; and to appeal to the recollection of the jurors to support his statement. Representing as he did his client’s most precious interests, he should have pressed the point in one of the methods indicated; and that the court would have assisted him in. doing so we cannot doubt; but if the justice should have still refused his motion, then, according to several cases cited by defendant’s counsel, the appellate court could have reviewed such refusal on exceptions.”
As we have stated, this bill of exceptions was brought to the trial justice for signature two years after.the case was tried. The counsel on both sides have changed since, and the record, including the brief statement of the substance of the testimony and the charge, is all that is certain in the case. Upon this showing we are satisfied the jury were justified in their verdict, and that there is no error in the rulings of the court below.

The judgment of the court below is affirmed.