BALTIMORE & OHIO S. W. RY. v. AMELIA MOLONEY, ADMRX.

1. STARTING HORSE ON TROT ACROSS TRACKS AFTER LOOKING BOTH WAYS NOT
CONCLUSIVE OF SEEING APPROACHING TRAIN.

The fact that one about to drive over a railroad track looks each way and
then starts his horse on a trot is not conclusive proof that he saw an
approaching train.   Such action is ordinarily that of a prudent man
who desires to avoid any possible risk in a place well-known to be dan-
gerous.

2. DUTY OF RAILROAD AT CROSSING THE VIEW OF WHICH IS OBSTRUCTED BY TREES.

It is not incumbent upon a railroad company to regulate the speed of its
trains at a given crossing with due regard to "all the circumstances
surrounding the place and affecting the traveling public," where tes-
timony has been introduced tending to show that the view was to
some extent obstructed by trees, weeds, etc., not on the company's right
of way and to so instruct a jury is erroneous.

3. RAILROAD NOT REQUIRED TO GIVE NOTICE OF APPROACH OF TRAINS SUCH AS WILL
PROTECT TRAVELER FROM INJURY.

Inasmuch as the manner of giving notice of the approach of a train at
crossings is prescribed by statute, an instruction that such notice "must
be given so that one approaching could protect himself from injury" is
erroneous.

4. SPECIAL INTERROGATORIES REFUSED IN ABSENCE OF REQUEST FOR ANSWER IN
CASE OF GENERAL VERDICT.

The refusal to submit special interrogatories to the jury, where the request
did not contain the condition that the interrogatories be answered in
case of the return of a general verdict, is not erroneous.

ERROR to Hamilton common pleas.

**Harmon, Colston, Goldsmith & Hoadly,** for plaintiff in error.
**Renner & Renner,** for defendant in error.

### GIFFEN, J.

The original action was commenced by Amelia Moloney, as admin-- istratrix of the estate of Timothy Moloney, deceased, against the defend- ant railway company, to recover for the death of Timothy Moloney, occasioned by alleged negligence of the railway company in managing: one of its trains at the Forest avenue crossing in the village of Norwood..

The railway at this crossing consists of two main tracks known as; the east and west bound, and a side track ending about 141 feet east of the middle line of Forest avenue, and lying south of the east bound: main. At the time of the accident there were two coal cars loaded with: coal at or near the end of the side track. The office of the coal dealer which obstructed the view of the track to some extent was situated 104 feet east of the middle line of Forest avenue, and thirty-three and five- tenths feet south of the middle line of the east bound main.

The decedent, at the time of the accident, was driving a horse in; an ordinary spring wagon for the delivery of meat, in a northerly di-- rection. The evidence tended to prove that the railway company, through its servants, failed to give warning of the approach of the train,. either by blowing a whistle or ringing a bell. It also tended to prove· that when the fore feet of the horse were between the rails of the east bound main track, the driver looked toward the east and west, or as; one witness said "up and down the track," and then suddenly whipped his horse into a trot, and that the engine struck the wagon between the· fore and hind wheels.

The first alleged error is the overruling of the motion to arrest the·· evidence from the jury, and render a judgment for the defendant.

While there is some conflict of testimony as to when the decedent. could first see down the track in the, direction from which the train was; coming, the chief contention of counsel for plaintiff in error is, that having looked toward the east, the direction from which the train was. coming, and then suddenly whipping his horse, he must have seen the·· train and was, therefore, negligent in trying to cross over the track. It. is perhaps a strong circumstance tending to support the theory of counsel but on the other hand it is by no means uncommon to see a prudent, person, when about to cross a railroad track, look up and down the same, and although no train is in sight, suddenly urge the horse into a trot. manifestly for the purpose of avoiding any possible risk in a place well known to be dangerous. It is not unlike that care which forbids one to·

point an unloaded gun at another lest it might, without his knowledge, be loaded. Unless, therefore, the court could be certain that the decedent saw the train approaching from such a distance as would prevent an ordinarily prudent man from attempting to cross, it was justified, and we think rightly in this case, in submitting the question to the jury.

Without reviewing all the testimony contained in the voluminous bill of exceptions, it is sufficient to say that there is no error in overruling the motion for a new trial upon the ground that the verdict was not sustained by sufficient evidence.

Numerous objections are made to the general charge; the first one being as follows:

"The burden of proof is upon the defendant to show that, if it was negligent, that Moloney was also negligent, and negligence which contributed directly to the accident."

This charge, without any qualification as to the burden of proving contributory negligence, would be erroneous, but at the request of the defendant, the court gave the following special charge:

"I charge that the plaintiff, before she can recover in this action, must have proved by a preponderance of the evidence, the material allegations of the petition, showing the following facts:

"First. That there was no want of ordinary care contributing to the accident.

"Second. That the injury to decedent resulted solely from the want of ordinary care on the part of the defendant."

In this instruction, the burden is placed upon the plaintiff of not only removing any presumption of negligence that might arise from her own testimony, but of proving in the first instance no want of ordinary care on the part of the decedent contributing to the accident, and having done this as the instruction required—if the jury so found —the burden of proving contributory negligence would rest upon the defendant.

The next paragraph objected to is as follows:

"You will find that we use 'proximate cause' in our charge. Proximate cause means that cause without the existence of which the injury would not have been sustained."

Proximate cause has been variously defined. In 21 Eng. Enc. Law 485, it is given as follows:

"The proximate cause, in the law of negligence, is such a cause as operates to produce particular consequences, without the intervention of any independent, unforeseen cause without which the injuries would not have occurred."

Railway v. Moloney.

Also note on the same page the following:

"Proximate cause of an injury has been said to be the last negligent act contributing thereto, and without which such injury would not have resulted." *Schwartz v. Shull,* 45 W. Va. 405 [31 S. E. Rep. 914].

The definition complained of is, therefore, not accurate, but taken in connection with other parts of the charge, we think the jury were not mislead by it.

The following is also objected to:

"The right of the railroad company to enjoy the use of its railroad at this crossing of Forest avenue,. and the right of Moloney to use Forest avenue were co-ordinate and equal."

This is almost the identical language of the third proposition of the syllabus in the case of *Pittsburg, Ft. Wayne & Chicago Ry.* v. *Maurer,* 21 Ohio St. 421, and is not overruled, either expressly or by implication, in the case of *New York, C. & St. L. Ry.* v. *Kistler,* 66 Ohio St. 326 [64 N. E. Rep. 130].

The next paragraph of the charge objected to is as follows:

"The railroad company had the right to run the train at the time and place of this collision at any speed consistent with the safety which was necessary in the conduct of its business in the usual and ordinary manner, taking into consideration, however, all the circumstances surrounding that crossing, affecting the traveling public and having due regard for the safety of the public using the crossing."

The charge is identical, except as to the parties, with the charge considered in *New York, C. & St. L. Ry.* v. *Kistler, supra,* page 341, where it is said:

"From what has already been said as to the speed of trains, it will readily be seen that the latter part of this charge, all after the word 'manner,' is erroneous."

The charge in that case related to a crossing in the country, whereas in this case the crossing is in a village and was frequently used by the public. The rule regulating the speed of railroad trains in open country would be neither proper nor safe when applied to trains running through a city or town.

The phase of that paragraph "all the circumstances surrounding that crossing," would include the trees, which according to the testimony to some extent obstructed the view, and, therefore, brought it within the rule stated in the seventh paragraph of the syllabus in *New York, C. & St. L. Ry.* v. *Kistler, supra,* which is as follows:

"As a railroad company has no control over the trees, weeds, brush,

shrubbery and the like, not on its right of way, it is not required to take such things into consideration when approaching a crossing."

The following paragraphs in the general charge are also objected to :

"The law puts upon the railroad commissioner of Ohio the duty of determining the necessity of establishing a flagman or safety gates and automatic bells upon any particular street crossing of a railroad, but the absence of safety gates or flagmen or automatic bells at this crossing when the accident occurred, is of itself no evidence of negligence upon the part of the railroad company.

"Unless you find, gentlemen of the jury, from the evidence that at the time of the accident, because of the special circumstances existing in this crossing, or that the railroad company, by reason of a number of trains or speed it ran the trains across Forest avenue, its number of tracks, or having cars standing on the side track near such crossing, that this was a crossing much used at this time and necessarily frequently presenting a point of danger, that owing to the near situation of buildings, fences, trees, or other obstructions which afforded less than ordinary opportunity for the seeing of an approaching train, and other like circumstances of a special nature, that acting with reasonable care and prudence it was reasonable that the railroad company should provide special safeguards to persons using the crossing in a prudent and cautious manner commensurate with the danger of the locality. The law authorizes you to infer negligence on the part of the railroad company for any failure to adopt such safeguards as would have given warning, if you find that the situation of the crossing at the time of the accident required them, and of this you are the judge."

Without considering the several reasons assigned by counsel why this charge is erroneous, it is sufficient to say that there is no allegation in the petition of negligence by reason of the failure to maintain safety gates or a watchman at the crossing. It is true that the plaintiff avers in her petition that the defendant did not maintain or operate any safety gates, nor did they have stationed at said point a watchman, but she nowhere alleges that such safeguards were negligently omitted. The only negligence charged in the petition is the careless and unskillful acts of defendant and its servants and employes in managing and moving the engine and cars.

The failure to provide gates or a watchman was a fact competent only for the purpose of showing negligence in the operation and management of the train. *Baltimore & Ohio S. W. Ry.* v. *Lockwood,* 72 Ohio St. 586 [74 N. E. Rep. 1071]; second paragraph of the syllabus in *New York, C. & St. L. Ry.* v. *Kistler, supra.*

### Railway v. Moloney.

The next paragraph complained of is as follows:

"So if you find that the train hands got no proper lookout and managed the train without due caution and reasonable care, you will be authorized to infer negligence on the part of the company as one of the facts established in the case."

This charge was approved in the case of *Grand Trunk Ry.* v. *Ives,* 144 U. S. 408 [12 Sup. Ct. Rep. 679; 36 L. Ed. 485]. It is claimed, however, that it is in conflict with the language used in the Kistler case, page 336, but the charge itself is not given in that case, but was evidently confined to the duty of the train hands in keeping a proper lookout, whereas in this case, it is coupled with the additional duty as to managing the train with due care. It is unreasonable to suppose that this charge misled the jury to believe that each and every train hand, whether in the engine or baggage-car, was chargeable with the same duty.

The next charge complained of is as follows:

"It is the duty of the defendant company, as I have heretofore told you, by proper signals such as blowing a whistle and ringing a bell in such manner as I have described, as would ordinarily notify a person approaching the crossing that the train was approaching the crossing; but this notice must be given so that the person approaching could protect himself from injury."

The latter clause in this charge is objectionable for it is equivalent to saying that the notice must be given in such manner that the person approaching could protect himself from injury. The manner of giving notice is prescribed by statute, and when given in accordance therewith, has usually been found sufficient to protect those using a railroad crossing, with ordinary care.

The court further charged the jury as follows:

"Although the defendant's negligence may have been the primary cause of the injury complained of, yet the administratrix cannot recover in this case if the proximate and immediate cause of the injury can be traced to the want of ordinary care and caution on the part of the deceased, Moloney, unless it be shown that the defendant railroad company might by the exercise of reasonable care and prudence have avoided the consequence of the injured party's negligence."

It is manifest from the testimony that if the engineer and fireman were keeping a lookout that one or both of them must have seen the decedent some time before reaching the crossing, and that a very slight reduction in the speed of the train would have saved him. The proviso in this charge does not embrace actual knowledge on the part of

Hamilton County.

the defendant of the peril of the decedent and is therefore erroneous. *Erie Ry.* v. *McCormick*, 69 Ohio St. 45 [68 N. E. Rep. 571].

The last paragraph complained of is:

"Examine his acts and doings along the line of the then situation, the nature and character of the crossing, the nature and difficulty of seeing the train approaching, the time of day, and the probability of danger of passing trains, whether there was noise or confusion, and every fact and circumstance bearing on the case to influence his conduct then and there under these circumstances."

The specific objection to this charge by counsel for plaintiff in error is that there was no evidence of noise or confusion, and that there was no other train due, in sight, or about due. The bill of exceptions does not bear out counsel's statement as to noise or train about due.

Finally, it is urged that the court erred in refusing to submit two special interrogatories to the jury. The request contained no condition that the questions be answered in case a general verdict shall be rendered. It was not error, therefore, to refuse to submit them to the jury. *Gale* v. *Priddy*, 66 Ohio St. 400 [64 N. E. Rep. 437].

Judgment reversed for error in the charge of the court, and cause remanded for a new trial.

**Jelke** and **Swing, JJ.,** concur.