(49 South. 1015.)

No. 17,375.

DAVIDSON v. ILLINOIS CENT. R. CO.

(April 26, 1909.   Rehearing Denied June 30, 1909.)

1. RAILROADS (§ 314*)—ACCIDENTS AT CROSSINGS—DUTY OF RAILROAD.

A passenger train running at about 40 miles an hour at a crossing, where there are obstructions to the view near the line of the track, and meeting at that point a long freight train going in the opposite direction, its officers and employés should look carefully in order to avoid an accident.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 314.*]

2. TRACK STRAIGHT.

The road in front was open and uninterrupted; the track is straight.

3. RAILROADS (§ 338*)—ACCIDENTS AT CROSSINGS — INJURY AVOIDABLE NOTWITHSTANDING CONTRIBUTORY NEGLIGENCE.

The boy killed, the weight of the evidence shows, was on the track of the passenger train a minute or over, looking at the passing freight train.   His back was to the advancing train.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1096–1099; Dec. Dig. § 338.*]

4. DECEDENT SHOULD HAVE BEEN SEEN.

The boy should have been seen before he was seen in time for sharp and sudden alarm.

(Syllabus by the Court.)

Appeal from Twenty-Fifth Judicial District Court, Parish of Tangipahoa; Clay Elliott, Judge.

Action by Nancy Davidson against the Illinois Central Railroad Company.   Judgment for plaintiff, and defendant appeals.   Affirmed.

Hunter Collins Leake, Gustave Lemle, and Kemp & Spiller, for appellant.   William Breed Kemp, Robert Guy Richardson, and Thomas Milton Bankston, for appellee.

BREAUX, C. J.   Plaintiff, mother of Milton Davidson, deceased, a boy of 12 years of age, who was run over and killed by one of the trains of defendant road, sued for damages on that ground in the sum of $30,000.

She averred that the killing was the result of the criminal negligence of the defendant, its agents and employés.

The boy was killed at a crossing about a quarter of a mile from a flag station named Fluker.

He was killed on the 22d day of September, 1907.

Defendant controverts plaintiff's allegation, and avers that the negligence of the deceased was the cause of his own death.

Defendant charges plaintiff, also, with negligence in allowing her son to trespass upon its tracks.

Plaintiff answered the appeal, and asked for an amendment of the judgment by increasing the amount of the judgment of the district court allowing $2,000 as damages.

Statement of the Case.

The defendant has two parallel tracks; one for trains going north, and the other for trains going south.

At the moment that the passenger train south bound was passing at this point, a north-bound freight train, made up of about 60 cars, was passing on its way.   This was during the daytime.

There was a man sitting in the cupola of the caboose of the freight train.

Just prior to and at the moment that the

boy was run down and killed, he (the man in the cupola) was looking at the southbound passenger train and saw the boy a moment before he was killed by that train.

To one on the track, the view north and south was unobstructed. As to the west side of the track, it was different. There were dense bushes along the track some little distance from the crossing at which the boy was killed. They obstructed the view on the west side. That is, the line of vision of the pedestrian on a level with the bush was obstructed for a moment from seeing the coming train while the bush was between him and the train.

The boy's home was with his mother in a dwelling near the track.

The testimony is conflicting. Not only the witnesses for plaintiff are contradicted by those of the defendant on material points, but the witnesses are not always consistent with themselves in their own statements.

The witnesses for plaintiff did not see the boy come on the track from the west.

Some of the witnesses for defendant said they saw him coming from that direction and slowly running to the track.

The witnesses for the plaintiff state that their attention was attracted to the boy while he was standing on the track looking in the direction of the north-bound freight train. He did not seem to notice the rapidly coming passenger train.

Defendant's witnesses insist that he came to the track as before mentioned, stopped a moment on the track, and passed to the neutral ground between the two tracks, a distance of about five feet, and that just before the accident he retraced his steps to the track on the west side and immediately met with his death.

The engineer, as a witness, stated that after the boy had passed in front of his advancing engine and train he supposed that the boy's object was to overtake the north-bound freight train, and that when he first saw him he was about 35 or 40 feet in front of the train.

Again, the engineer says that he applied the emergency brakes just before the accident.

The train did not stop after the accident, but ran on to the station near by, a distance of about a quarter of a mile, where a passenger going to the place alighted, and then the train returned to the place of the killing.

There was considerable dispute about the emergency brakes which the engineer said he put on to avoid the accident and to stop the train; also about the warning just before the casualty. Witnesses for defendant who testified on the subject were very certain in that regard.

Witnesses for the plaintiff were equally as certain in their testimony to the contrary. Several of the witnesses stated that the emergency brakes could not have been put on without causing a jerk or a jolt to the passengers on the train, and a witness on the train testified that he felt no such jerk or jolt.

It also appears as a fact that the train was running at the time at the rate of 40 miles an hour.

### Discussion and Judgment.

Where two trains cross each other, one a long freight train and the other a passenger, running in diametrically opposite directions, those in charge should be at their respective stations and exert due care and attention at that particular time.

Our reading of the testimony has not resulted in convincing us that there was due care exercised while they were at their posts of duty.

Just then it happened that the attention of the engineer was called to another part of his duties, and the fireman deemed it proper just then to put coal in the furnace. This may account for their not seeing the

boy in time, and for the want of sufficient alarm after he was seen on the track.

We infer that he must have been on the track of the advancing train. The weight of the testimony shows that he was there about a minute before he was struck.

The averment about his standing on the neutral ground is not sustained by the weight of the testimony.

We will also state that the testimony of the engineer is not convincing. He testified that the boy came on the track when the train was within 30 or 40 feet of him. At another time in his testimony he said that he was on the west side of the engine cab and that the boy was on the east.

He could not have seen the boy within that distance, because his vision was interrupted by the boiler. It must have been considerably further than he states if he saw him.

We have noted above that the engineer had stated that the boy was trying to catch the passing freight train.

There is nothing in the testimony to lead to that inference. It is not a supposition which can be drawn from the facts and circumstances. There was no reason for the boy to attempt to catch the train. Moreover, this supposition is at variance with the testimony which places the boy in front of the train about a minute before it ran on him and crushed him.

At this crossing, while passing the freight train on one side of a track, near which there was a dense bush, danger had increased, and it follows that the precautions should have been increased. The train should have been in hand sufficiently not to run over a child in open view. There should have been signals, and the train checked by the emergency brakes, so that it would have been well known that these brakes had been applied because of their effect upon the running train. It does seem at this particular place in passing another train it would have

been reasonably prudent to have kept an active lookout.

However much a high rate of speed is desired, and however much engineers have endeavored to increase that rate, it should not be forgotten that human life must be protected when reasonably possible. There are occasions when the necessity of making fast time pales into insignificance as compared with the necessity of sparing human life.

The deceased is referred to in argument as having been a trespasser.

Without further testimony than there is before us, we are not able to conclude that he was a trespasser. Why he went on the track is unexplained and unknown. Neither is it certain that he failed "to look and listen."

But conceding that he was a trespasser, the company owed ordinary care to him to the end of avoiding the accident.

We are sensible of the necessity under which one is placed to take care of himself. But if a person goes on a crossing and receives no warning and thereby meets with an accident, if the accident proves fatal, his representatives are not without right to recover.

Jurisprudence is somewhat exceptional in regard to accidents at crossings. A person seeking to cross is considered as having some rights. Trespass is not fixed upon him as a matter of presumption. Florida Cent. & P. R. R. Co. v. Williams, 37 Fla. 406, 20 South. 558.

We return for a moment to the thought that this boy was standing, as shown by the evidence of the witnesses, in front of the advancing train, facing an opposite direction, a sufficient length of time before the train struck him to stop the train.

There is evidence showing that the boy was on the track when the train passed the whistling post. That was about a half a

mile further north than the place where the boy was killed.

Within that distance there was surely ample time to see him.

The negligence charged will not suffice as a defense if there was possibility of avoiding the accident. McGuire v. Vicksburg, S. & P. R. Co., 46 La. Ann. 1543, 16 South. 457; Grand Trunk R. Co. v. Ives, 144 U. S. 429, 12 Sup. Ct. 679, 36 L. Ed. 485.

The defense urged on the ground that the mother should not have permitted her son to go on the track is not sustained by the facts. The testimony of the mother is that she did not know that he was on the track.

That principle was considered in the case of Westerfield v. Levis Bros., 43 La. Ann. 63, 9 South. 52.

The mother, who knows nothing of the absence of her child, if the child was killed in an accident which might have been avoided, cannot, unless it be shown in some way that she was negligent in regard to her child, be held negligent.

As relates to the amendment of the judgment applied for by the plaintiff, we infer that the boy did not suffer; he was killed instantly.

We have been given no good reason why this judgment should be increased.

In considering the whole case, we have concluded that there should be no increase.

For reasons stated, the judgment appealed from is affirmed.